## WHITNEY v. TAYLOR.

### (Circuit Court, N. D. California. January 12, 1891.)

PUBLIC LANDS—RAILROAD GRANTS—RESERVATIONS—PRE-EMPTION CLAIMS.

    Act Cong. July 1, 1862, (12 U. S. St. 489,) granted in aid of a railroad company all the odd-numbered sections of land within certain limits "to which a pre-emption or homestead claim may not have attached." In 1857 one J. had filed a pre-emption declaratory statement on land within the terms of the subsequent grant, which statement remained intact until after the final location of the railroad, and until 1885, when it was canceled because J. had never lived on the land. *Held* that, notwithstanding the subsequent cancellation of the statement, the pre-emption claim had attached to the land within the meaning of the statute, and hence such land is excluded from the grant, and is open to settlement after such cancellation.

At Law.

*A. P. Catlin* and *B. E. Valentine*, for plaintiff.

*Robert T. Devlin*, for defendant.

HAWLEY, J. This is an action of ejectment. The cause was tried before the court without a jury. The plaintiff claims title under a deed from the Central Pacific Railroad Company. The land in question is situate in the odd-numbered sections which were granted to the railroad company by the act of congress of July 1, 1862. 12 U. S. St. 489. · This land, under and by virtue of said act of congress, became vested in the railroad company on the 26th day of March, 1864, when the map of the definite location of said railroad was filed in the proper department at Washington, unless it had been "sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached." The testimony shows that one Jones filed a pre-emption declaratory statement on the land in question on the 28th day of May, 1857, in the proper land-office, alleging settlement thereon in January, 1854; and this declaratory statement remained intact and unacted upon until long after the date of the filing of the map of the definite location of the railroad, to-wit, until 1885, when it appearing, in proceedings had before the commissioner, that Jones never lived on the land, his filing was canceled. The commissioner of the land-office, after Jones' declaratory statement had been canceled, decided that, "at the date when the route of the C. P. R. R. Co. was definitely fixed, a pre-emption claim had attached thereto, [that of Jones;] and, as the grant to said company expressly provided that lands to which a pre-emption claim had not attached were granted, it follows that lands to which such a claim had then attached were not granted." This decision was affirmed by the secretary of the interior. The defendant,

Taylor, subsequent to the decisions in the land-office holding the land in question "to be open for settlement by the first qualified person applying therefor," applied for said lands under a homestead entry, and, after a contest in the land-office with the Central Pacific Railroad Company, it was decided that he was entitled thereto.

The legal question presented in this case is whether, under the facts stated, a pre-emption claim had attached to the land within the meaning of the act of congress. Plaintiff's counsel contends that a pre-emption claim, within the meaning of the statute, is a recognized claim in favor of a qualified pre-emptor who has settled on the land, and who, by compliance with the prerequisites of the act of congress, is entitled to have his claim ripen into a perfect title. The application of Jones might have been canceled prior to the time when the grant took effect, if proper action had been taken to produce that result in the land department; but, as his declaratory statement remained on file, valid upon its face, a pre-emption claim had attached, within the meaning of the act of congress, and the land did not pass to the railroad company. The failure of Jones to comply with the pre-emption laws did not cause the land to revert to the railroad company, and it did not, by reason of any failure of his to comply with the law, become a part of the grant; but, upon the cancellation of his statement, the land was open for settlement. This conclusion is sustained by the land department and upheld by the decisions of the supreme court of the United States in *Railroad Co.* v. *U. S.*, 92 U. S. 734; *Newhall* v. *Sanger*, 92 U. S. 761; *Railway Co.* v. *Dunmeyer*, 113 U. S. 629, 5 Sup. Ct. Rep. 566; *Railroad Co.* v. *Whitney*, 132 U. S. 357, 10 Sup. Ct. Rep. 112; and by the supreme court of Nebraska, *Railroad Co.* v. *Abink*, 14 Neb. 95, 15 N. W. Rep. 317. It is true that in several of these cases there was either a valid homestead claim initiated by settlement followed by an entry, or a pre-emption claim initiated by a settlement followed by a declaration of intention to purchase; but the decisions are based upon the fact of the filing of the declaratory statements in the proper land-office. The cases all proceed upon the theory that when this claim is filed the right of the applicant becomes "attached to the land." The word "claim," as used in the act, was not intended to be restricted to such homestead and pre-emption claims as should afterwards ripen into perfect title, but was intended to include all claims that were made in such form as to be recognized and allowed by the land-office, without any regard to the question whether they were valid at the time of filing, or whether they were afterwards perfected, abandoned, canceled, or forfeited. In *Railway Co.* v. *Dunmeyer, supra,* the court, in distinguishing the case from *Mining Co.* v. *Bugbey,* 96 U. S. 165, said:

"In the case before us, a claim was made and filed in the land-office, and there recognized, before the line of the company's road was located. That claim was an existing one, of public record, in favor of Miller, when the map of plaintiff in error was filed. In the language of the act of congress, this homestead claim had attached to the land, and it therefore did not pass by the grant. Of all the words in the English language this word 'attached' was

probably the best that could have been used.   It did not mean mere settlement, residence, or cultivation of the land, but it meant a proceeding in the proper land-office, by which the inchoate right to the land was initiated.   It meant that by such a proceeding a right of homestead had fastened to that land, which could ripen into a perfect title by future residence and cultivation.   With the performance of these conditions the company had nothing to do.   The right of the homestead having attached to the land, it was excepted out of the grant as much as if in a deed it had been excluded from the conveyance by metes and bounds."

In *Railroad Co.* v. *Whitney, supra,* the court, in answer to the contention of counsel for plaintiff that the *Dunmeyer Case* had no application, because in that case the entry existing at the time of the location of the road was an entry valid in all respects, while the entry in the case then under consideration "was invalid on its face and in its inception," said:

"We do not think this contention can be maintained.   Under the homestead law, three things are needed to be done in order to constitute an entry on public land.   *   *   *   When these three requisites are complied with, and the certificate of entry is executed and delivered to him, the entry is made, the land is entered.   If either one of these integral parts of an entry is defective,—that is, if the affidavit be insufficient in its showing, or if the application in itself is informal, or if the payment is not made in actual cash,—the register and receiver are justified in rejecting the application.   But if, notwithstanding these defects, the application is allowed by the land-office, and a certificate of entry is delivered to the applicant, and the entry is made of record, such entry may be afterwards canceled on account of these defects by the commissioners, or on appeal by the secretary of the interior;   *   *   *   but these defects, whether they be of form or substance, by no means render the entry absolutely a nullity.   So long as it remains a subsisting entry of record, whose legality has been passed upon by the land authorities, and their action remains unreversed, it is such an appropriation of the tract as segregates it from the public domain, and therefore precludes it from subsequent grant."

After quoting from *Newhall* v. *Sanger,* where the general principle applicable to all these cases was clearly announced, and referring to the rulings of the land department in harmony therewith, the court said:

"For the foregoing reasons, we concur with the court below that Turner's homestead entry excepted the land from the operation of the railroad grant; and that, upon a cancellation of that entry, the tract in question did not inure to the benefit of the company, but reverted to the government, and became a part of the public domain, subject to appropriation by the first legal applicant."

The views I have expressed are conclusive of the case, and render it unnecessary to discuss, at any length, other questions raised at the trial with reference to Jones' failure to file his claim within three months after the filing of the township plats of survey, as required by the act of congress of March 3, 1853, (10 U. S. St. 246,) or his failure to make final proof and payment for the land prior to the 14th day of February, 1858, the day appointed by the president for the commencement of the public sale, including said lands.   These are questions that could only be raised when the validity of Jones' claim came up regularly for a hearing in the land-office.   As was said by the court in *Railway Co.* v. *Dun-*

*meyer*, 113 U. S. 641, 5 Sup. Ct. Rep. 566, and repeated in *Railroad Co.* **v.** *Whitney*, 132 U. S. 364, 10 Sup. Ct. Rep. 112:

"It is not conceivable that congress intended to place these parties [homestead and pre-emption claimants, on the one hand, and the railway company, on the other] as contestants for the land, with the right in each to require proof from the other of complete performance of its obligations. Least of all is it to be supposed that it was intended to raise up, in antagonism to all the actual settlers on the soil whom it had invited to its occupation, this great corporation, with an interest to defeat their claim, and to come between them and the government as to the performance of their obligations."

Let judgment be entered in favor of defendant for his costs.