UNITED STATES v. UNION PAC. RY. CO. et al.

(Circuit Court, D. Kansas. April 9, 1894.)

No. 6,886.

PUBLIC LANDS—RAILROAD GRANTS—EXCEPTED CLAIMS—PRE-EMPTIONS.

The mere filing of a declaratory statement, without any previous settlement, as required by the pre-emption laws (Rev. St. § 2264 et seq.), was not sufficient to cause a pre-emption claim to become "attached" to the lands so as to except it out of the grant made to the Union Pacific Railway Company by the act of 1864. Whitney v. Taylor, 45 Fed. 616, disapproved.

This was a suit by the United States against the Union Pacific Railway Company, William Hoard, and others, to cancel a patent issued to that company for certain lands which, at the time of the suit, were claimed by said Hoard under mesne conveyance from it.

W. C. Perry, U. S. Atty., and Morris Cliggitt, Asst. U. S. Atty.
N. H. Loomis and A. L. Williams, for defendant.

RINER, District Judge. This is a bill in equity to cancel a patent, issued September 10, 1874, to the Union Pacific Railway Company, and to have a deed executed by one Jacob Quinn to William Hoard, one of the defendants herein, declared void. It is alleged in the bill that at the time the map of definite location of the Union Pacific Railway Company, eastern division, was filed, as required by the act of congress, a pre-emption claim had attached to the land in controversy, and for that reason the land was excepted from the grant to the railroad company. The evidence in the case discloses that the map of definite location of the railroad was filed on the 8th of May, 1867; that the land was thereafter conveyed by warranty deeds, as follows: March 11, 1873, Union Pacific Railway Company to Milo D. Powers; September 3, 1875, Milo D. Powers to Hartman Berg; April 22, 1881, Hartman Berg to William H. Whitman; July 28, 1883, William H. Whitman to Jacob Quinn; September 1, 1885, Jacob Quinn to William Hoard, who now resides upon the land, and has ever since the date of his purchase in 1885. The evidence further shows that on the 21st day of June, 1866, one Charles Elder filed in the land office at Junction City, Kan., a declaratory statement as follows:

"I, Charles Elder, of Saline county, Kansas, a single man over the age of twenty-one, a citizen of the United States, did on the 8th day of June, A. D. 1866, settle and improve the N. E. ¼ of section 1, town 15 south, of range 3 west of the 6th principal meridian, in the district of lands subject to sale at the land office at Junction City, Kansas, which land has not been offered at public sale, and thus rendered subject to private entry; and hereby declare my intention to claim said tract as my pre-emption right under the provisions of said act of the 4th of September, 1841. Given under my hand this 21st day of June, A. D. 1866. In the presence of Edward Martin. Charles Elder."

I think the evidence establishes beyond all question that Elder never made settlement on the land in controversy, and the statement in his declaration filed on the 21st of June, 1866, that he did on the 8th day of June, 1866, settle and improve the land in controversy, is not sustained by the proof. The act of congress of 1862, as amended in 1864, granted to the defendant railway company, within designated lines, every alternate section of public land, designated by odd numbers, on each side of the line of road not sold, reserved, or otherwise disposed of by the United States, "and to which a pre-emption or homestead claim may not have attached at the time the line of said railroad is definitely fixed." Thus we are brought to a consideration of the question whether by the mere act of Elder's filing this declaratory statement in the land office, without having made previous settlement, as required of pre-emption claimants under the laws of the United States, it can be said that a pre-emption claim had attached to this land within the meaning of the granting act of 1862, and that the land was thereby excepted from the grant to the railroad company. This necessarily leads to an examination of the pre-emption laws of the United States,

and the method of initiating a claim thereunder, as distinguished from initiating a claim under the homestead laws of the United States. The word "attached" means, according to Webster, "to bind; to fasten." Therefore, for a pre-emption or homestead claim to attach to a piece of land, the claimant must perform the acts required by the laws of the United States to be performed by him, to bind or fasten his claim to the land. In other words, he must initiate his right to the land in the way provided by law, so that, if he thereafter complies with the requirements of the statute, the inchoate right to the land thus initiated could ripen into a perfect title. The first thing required of a party desiring to make a pre-emption claim, under the pre-emption laws of the United States, is to make a settlement on the land in person; second, to inhabit and improve the same; and, third, to erect a dwelling house thereon. Section 2259, Rev. St. This he must do. He is not authorized by the statute to make a declaratory statement until after settlement, because in his declaratory statement he must set forth that, prior to the date of the declaration, he has settled upon and improved the land he seeks. An examination of the statute relating to pre-emptions will show in almost every section that settlement is the first step required by the pre-emption law to initiate a pre-emption claim. Thus, section 2264 provides that, wherever a person settles or improves a tract of land subject at the time of settlement to private entry, he must file a declaratory statement within 30 days from the date of settlement. Section 2265 provides that every claimant under the pre-emption law for land not yet proclaimed for sale shall make his declaratory statement within three months of the date of settlement. Section 2266 provides, in regard to settlements which are authorized upon unsurveyed lands, that the claimant shall file his declaratory statement within three months from the date of the receipt at the district land office of the plat of the township embracing such pre-emption settlement. Section 2268 provides: "Where a pre-emptor has taken the initiatory steps required by law in regard to actual settlement, and is called away from such settlement by being in the military service, that the time for making the proof shall be extended," etc. Section 2271 provides that this chapter shall be so construed as not to confer upon any one a right of pre-emption by reason of a settlement made on a tract theretofore disposed of, when such disposal has not been confirmed by the general land office. Section 2273 provides that, when two or more persons settle on the same tract of land, the right of pre-emption shall be in him who made the first settlement. Section 2274 provides that when settlements have been made upon agricultural public lands, prior to the survey thereof, and it has been or shall be ascertained, after the public surveys have been extended over such land, that two or more settlers have improvements upon the same legal subdivision, it shall be lawful for such settlers to make joint entry, etc. Section 2275 provides, where settlements with a view to pre-emption have been made before the survey of the lands in the field which are found to have been made on sections 16 and

36, those sections shall be subject to the pre-emption claim of such settlers. Thus it will be seen that settlement is made the initiatory step by the laws of congress to secure to a party the right of pre-emption. Indeed, it is so declared by the statute in section 2268. This section provides, "when a pre-emptor has taken the initiatory steps required by law in regard to actual settlement," he shall have the right, etc. It is not unusual for a number of declaratory statements to be filed on the same piece of land; but there can be but one pre-emption claim attached or fastened to the land, and that, as declared by the statute, shall be the one in which the first settlement was made. The language of the granting act does not recognize more than one pre-emption claim to a particular piece of land. The language is, "And to which a homestead or pre-emption claim may not have attached." That means a claim which is fastened to the land in the manner provided by law, so that if the subsequent steps in the matter of proof and payment are complied with the inchoate right thus initiated might ripen into a perfect title. No man could get a perfect title to land under the pre-emption laws without settlement. That is the first thing to be done. If he settles, he may have this right, and may file his declaratory statement within 30 days in one case, or within three months in the other two cases, or even at a later period, if no other rights have intervened. Johnson v. Towsley, 13 Wall. 90.

In the case above cited the record disclosed that settlement was made eight months prior to the time the declaration was filed; yet the supreme court held that the claim was a valid one, no rights having intervened, and that he might then file his declaration. A very different proceeding is required to initiate a homestead entry. Under the homestead laws, the first step required of the person applying to make a homestead entry is that he shall make affidavit before the register and receiver that he is the head of a family, etc., and that the application is made for his exclusive use, and that it is his purpose to settle and cultivate the land, and that he does not make the entry for the use or benefit of any other person. Upon filing this affidavit with the register or receiver, and on payment of $5 if the entry is for 80 acres, or $10 if it is more than 80 acres, he shall be permitted to enter the land specified in his application. Thus it will be seen that, before he can initiate any right under the homestead laws, he must make this affidavit and payment, and then, and not until then, is he allowed to settle upon the land for the purpose of securing any rights under the homestead laws. Counsel for the government contend that the question of settlement is immaterial, that the granting "act does not require that the claim shall be a lawful one, or that it shall be initiated properly or otherwise. It is sufficient that there is a claim (pre-emption or homestead) that may have attached." I do not see how it can be said that a pre-emption or a homestead claim has attached (that is, fastened) to a piece of land until the party has performed the acts required by law to initiate his right. True, he may not be able to perfect his title because of his failure to comply with the requirements

of the statute subsequent to settlement, and such failure would not operate to take the land out of the exception in the granting act, because if he had made a settlement with intention to pre-empt the land, that being the first act required by the statute, the pre-emption claim by virtue of that act had attached to the land, and it was therefore excepted. The same would be true in a homestead if he had filed the affidavit and made the payment which is required by statute as the first step. In either case, subsequent failure to make the proof and payment in order to get a perfect title would not have the effect to take the land out of the exception mentioned in the granting act. In the case of Hosmer v. Wallace, 97 U. S., at page 779, Mr. Justice Field, delivering the opinion of the court, says: "To create a right of pre-emption there must be settlement, inhabitation, and improvement by the pre-emptor." If there can be no right of pre-emption without settlement, how can it be said that a pre-emption claim attached to the land by the mere filing of the declaration where no settlement was made, and where if the party performed each successive step thereafter, as required by the statute, yet his title must necessarily fail. But counsel for the government in his brief says: "The mere filing exhausted the right of the person filing a declaratory statement. The pre-emption right was thus exhausted by having been used or exercised. If such filing was not a claim, what was it? If it did not attach to the land, why did it withdraw the land from further or other sale, and why did it prevent another pre-emption or homestead claimant from filing on the same land in utter disregard of this prior filing? Why was a contest or proceeding of any nature to declare the entry invalid necessary if a claim did not attach by the mere act of filing, and if a claim did attach as against a subsequent pre-emptor or a homestead claimant to the same land? Why did not such claim attach as to the defendant railway company? The trouble with this proposition, and with the questions propounded in connection therewith, is, first, that the lands in the case before us were not subject to private entry, as appears affirmatively from the declaratory statement, and therefore the filing of this declaratory statement did not exhaust the right of the person filing it. See Johnson v. Towsley, 13 Wall. 89, 90. To the first question I answer that the filing of this paper amounted to absolutely nothing, so far as acquiring any right of pre-emption by reason thereof is concerned. The other questions contained in the paragraph above quoted from the plaintiff's brief are easily answered. The filing of this paper did not withdraw the land from further or other sale, and did not prevent another pre-emption claimant from filing on the same land in utter disregard of this prior filing, and no claim attached as against a subsequent pre-emptor, or a homestead claimant to the same land. It is no unusual thing for two or more persons to file declaratory statements in the land offices of the United States, claiming settlement and improvement upon the same piece of land. But the statute provides, in such case, "the right of pre-emption shall be in him who made the first settlement."

In regard to the Dunmeyer Case, infra, I wish to be understood

that my suggestions at the hearing went to the extent only of indicating that if the principles announced in that case were to be applied to a pre-emption claim, it would be obiter, for the reason that the court did not have the pre-emption law under consideration in that case. There was no question arising in the case with reference to the pre-emption law, but the question, and the sole question, was as to when a claim attached under the homestead laws of the United States. A careful examination of that case, however, will disclose that the court did not attempt in any way to discuss or to announce any rule applicable to a pre-emption claim, and made no suggestion whatever as to when or how a pre-emption claim would attach to a piece of land, but, on the other hand, confined its discussion strictly to the case before it, namely, to a homestead. That is why Mr. Justice Miller, in writing the opinion, in the closing paragraph said that the word "attached" "did not mean mere settlement, residence, or cultivation of the land; but it meant a proceeding in the proper land office, by which the inchoate right to the land was initiated. It meant that by such a proceeding a right of homestead had fastened to that land, which could ripen into a perfect title by future residence and cultivation." He was there discussing a homestead entry, in which, under the laws of the United States, the first step to initiate the right was a proceeding in the land office. A homestead entry could not have been initiated by settlement, residence, or cultivation. By settlement, residence, or cultivation a right of homestead could not have fastened to the land which could ripen into a perfect title. But by a proceeding, and only by a proceeding first, had in the land office, and followed up by future residence and cultivation, could the right of homestead fasten to the land in such a way that it could ripen into a perfect title. On the other hand, the same learned judge, in announcing the opinion of the court in Johnson v. Towsley, held that a pre-emption claim was initiated by settlement, and, although the party neglected to file his declaratory statement in the land office for a period of eight months after the date of his settlement, yet, by reason of his settlement upon the land, he had initiated a right of pre-emption, and that his right thus initiated was not barred from the mere fact that he neglected to file his declaratory statement within the time prescribed by the statute, no rights having intervened.

I have examined every case I could find which would tend to throw any light upon this question, and with one exception have been unable to find any case which goes to the extent contended for by the government in this case. That exception is the case of Whitney v. Taylor, reported in 45 Fed., at page 616. In that case the learned judge holds that by the mere filing of a declaratory statement a pre-emption claim attached to the land, and, in support of his view, he cites the cases of Railroad Co. v. U. S., 92 U. S. 734; Newhall v. Sanger, Id. 761; Railway Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566; Railroad Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112. An examination of these cases will disclose that they were either homestead entries or reservations under Indian or Mexican grants, and that in no one of them was the pre-emption

laws under consideration. In the course of the opinion the learned judge, in commenting upon these cases, says:

"It is true that in several of these cases there was either a valid homestead claim initiated by settlement followed by an entry, or a pre-emption claim initiated by a settlement followed by a declaration of intention to purchase; but the decisions are based upon the fact of the filing of the declaratory statements in the proper land office."

The trouble about this statement is that a homestead claim can never, under the laws of the United States, be initiated by a settlement followed by an entry. Upon the other hand, it must be initiated by an entry followed by a settlement. Hence the decisions in homestead cases are properly based upon the fact of filings made in the land office, for that is the first step required by the statute to initiate a homestead entry, while, as I have already shown, a very different proceeding is required to initiate a pre-emption claim, the first step being a settlement with three months to file the declaration after settlement. In the first case, a homestead entry attaches by reason of the filing; in the second case, a pre-emption attaches by reason of the settlement. In the case of a homestead, the filing segregates the land from the public lands of the United States, and the inchoate right to the land is initiated by that act. In the case of a pre-emption, the settlement segregates it from the public lands of the United States, and the inchoate right is initiated by that act.

Where a homestead claim had attached by reason of the filing in the proper land office, or where a pre-emption claim had been initiated, and therefore attached to the land, by settlement at the time the map of definite location was filed, the land was excepted from the grant, no matter if the parties did thereafter fail to comply with the laws and to perfect their title. If the entry was canceled for that reason, the land would not go to the railroad company, but would be open for settlement. But without settlement and improvement, in the case of a pre-emption, no claim whatever attached to the land.

The testimony shows that the defendant Hoard purchased this land in good faith, relying upon the patent from the government to the railroad company; that he at the time of his purchase paid $5,000 for the land; that he has since made valuable and expensive improvements thereon. In making his purchase, I think he had the right to rely on the patent as being an act of the government which was final and controlling as to the title. Under the facts of this case, I must decline to give my consent to a decree which would deprive him of the benefits of his investment and years of labor, unless the court of appeals shall by its mandate direct me to enter such a decree. A decree will be entered in this court dismissing the bill and allowing an appeal.