HARTMANN v. WARREN et al.

(Circuit Court, D. Minnesota. December 18, 1895.)

**1. PUBLIC LAND—EFFECT OF ENTRY—WITHDRAWAL FROM SALE.**
Land upon which an entry of record, valid on its face, was made under the treaty with the Chippewa Indians, dated September 30, 1854, was thereby appropriated and withdrawn from entry or sale as public land.

**2. SAME.**
The fact that the certificate or scrip under which the first entry was made may have been illegally issued by the commissioner of Indian affairs, and that the action of the secretary of the interior in instructing the register of the land office to permit location may have been unauthorized, would not alter the effect of the entry as withdrawing the land from further disposition or sale; the scrip being valid on its face, and the land office records showing an acceptance of the entry.

This was a bill by Emil Hartmann against James H. Warren and others.

D. P. Dyer and P. H. Seymour, for complainant.

James K. Redington and J. M. Wilson, for defendants.

NELSON, District Judge. The tracts of land which complainant seeks to recover in this suit were entered under a certificate or scrip in the nature of a float, issued to one Warren, as a beneficiary, under the seventh clause of the second article of the treaty of 1854 with the Chippewa Indians of Lake Superior (10 Stat. 1110).

A synopsis of the bill of complaint is as follows: September 30, 1854, a treaty was concluded at La Pointe, in the state of Wisconsin, between the United States and the Chippewa Indians of Lake Superior and the Mississippi, by which said Indians ceded to the United States all the lands theretofore "owned by them in common with the Chippewas of Mississippi" lying east of a certain boundary line described in the treaty. By the seventh clause of the second article thereof "each head of a family or single person over twenty-one years of age at the present time, of the mixed bloods, belonging to the Chippewas of Lake Superior, shall be entitled to eighty acres of land, to be selected by them under the direction of the president, and which shall be secured to them by patent in the usual form." The defendant James H. Warren, a mixed-blood of the Chippewas of Lake Superior, as such, prior to the 21st day of January, 1875, made claim before the interior department that he was entitled to 80 acres of land under the treaty; and on January 22, 1875, the commissioner of Indian affairs, by authority of the secretary of the interior, issued a certificate to Warren that he was entitled to locate land thereunder. January 20, 1885, Warren executed to one Joseph H. Sharp two powers of attorney; one authorizing a location to be made in the name of said Warren for the 80 acres of land to which he claimed to be entitled; the other giving Sharp power to sell the land so to be located. On October 15, 1885, Sharp selected and located the premises in controversy, in the name of Warren, under the certificate, and on the same day conveyed the same lands to Kristian Kortgaard, one of the defendants herein. On March 11, 1889, and while the location of Warren was subsisting and pending, complainant, Hartmann, applied to the register and receiver of the land office at Duluth, Minn., to locate these premises with two Porterfield warrants; but the application was rejected, for the reason that the lands were embraced in the location previously made by Warren. March 19, 1889, Hartmann appealed from the decision of the local land officers, and at the same time filed his application to contest Warren's entry. On October 16, 1889, the commissioner of the general land office affirmed the decision of the register and receiver, and denied the application to contest the entry. The secretary of the interior, however, on appeal, held that the affidavits of Hartmann contained allegations sufficient to warrant a hearing; and upon the same being had at Duluth, in January, 1893, the land officers there decided that Warren was a beneficiary under the treaty; that he had power to sell his right in advance of location and patent, and to execute the powers of attorney before referred to. This decision, on appeal, was affirmed by the commissioner of the general land office and by the secretary of the interior. In December, 1894, a patent for the lands in suit was issued to Warren, and this title is the one in controversy. Com-

plainant then prays that the title be vested in him, for an injunction
restraining defendants from entering upon or removing ore from
the land, and for further and other relief.    Separate demurrers are
interposed by the defendants.

The particular facts alleged in the bill, in my opinion, decisive
of this case, are:    (1) That Warren is a mixed-blood of the Chip-
pewas of Lake Superior;    (2) that the tracts of land mentioned
in the bill were located by Sharp for Warren, October 15, 1885, as
a beneficiary under the treaty; (3) that the application of complain-
ant to enter these lands with Porterfield warrants was not made
until 1889, more than three years after the entry of Warren.    The
act of congress of April 11, 1860, under which the Porterfield war-
rants were issued, provided that they may be "located on any pub-
lic lands which have been surveyed, and which have not been other-
wise appropriated at the time of such location."    The application
of complainant to enter these lands was rejected by the local land
officers at Duluth, for the reason that the premises were embraced
in the previous location made by Warren.    True, this decision re-
jecting complainant's application was reversed by the secretary of
the interior in 1892, for the purpose of allowing a hearing upon the
allegations of contest; but, after protracted investigation in the
land department, Warren's location was sustained, and a patent is-
sued.

The question presented is, what was the effect of Warren's entry
upon the lands embraced therein?    Were they public lands there-
after, not otherwise appropriated, within the meaning of the act of
April 11, 1860?    It is well settled that all land to which any claims
or rights of others have attached does not fall within the designa-
tion of "public land."    Bardon v. Railroad Co., 145 U. S. 538, 12
Sup. Ct. 856.    Lands originally public cease to be such when thus
entered, and in no just sense can be said to be public after they have
been entered at the land office, and a certificate of entry obtained.
Witherspoon v. Duncan, 4 Wall. 218.    The uniform decisions of the
United States supreme court are to this effect, and as said by the
court in Railroad Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112:

"The almost uniform practice of the department has been to regard land
upon which an entry of record, valid upon its face, has been made, as appro-
priated, and withdrawn from subsequent homestead entry pre-emption set-
tlement, sale, or grant, until the original entry be canceled or declared for-
feited."

The early case of Cunningham v. Ashley, 14 How. 387, is also to
the same effect, as indicated by the opinion.    In that case, New
Madrid warrants had been located on the land, and these locations
were controlled by the defendants.    The complainant's entry was
rejected on the ground of these previous New Madrid locations, and
all subsequent attempts at entry were met with this same objection.
The court, speaking of these applications, said: "But the locations
of the New Madrid warrants were an obstacle then, as they had been
on the first application."    The reason for so holding is apparent.
The lands embraced in these locations were segregated from the
public lands, and were appropriated, so that they could not be dis-

posed of by the government until, by some means, the obstacle was removed. So long as these locations were sanctioned, the land department rejected all other applications to enter the lands embraced therein; but when the defendants procured for their own benefit entries of the land in controversy by virtue of certain floats, and relied upon this title only, the complainant's equity was found to be superior. Still, the court ordered that the decree should in no respect affect any right existing under the New Madrid locations.

It is urged by counsel that the certificate or scrip was illegally issued to Warren by the commissioner of Indian affairs, and that the action of the secretary of the interior instructing the register of the land office to permit location was unauthorized. But the scrip, upon its face, entitled Warren to locate it upon public land; and, when the entry was made, it was prima facie valid, and the lands became appropriated. The records of the land office showed an acceptance of Warren's entry; and until this obstacle was set aside, and the entry canceled, the land covered by it was not subject to further disposition or sale. Upon the face of the bill, therefore, the complainant has no equitable right or interest which can be enforced. There are other questions presented which would be decisive of the rights of the parties, but in the view I take of the case, as indicated above, it is unnecessary to consider them. The demurrers will be sustained, and a decree ordered dismissing the bill.