## D. P. TARPEY, APPELLANT, *v.* ANDREW MADSEN, RESPONDENT.

RAILROAD LAND GRANT—WHEN TITLE VESTED—TIME TO FILE NOTICE—FAILURE TO COMPLY WITH LAW—REVERSION TO UNITED STATES.

In an action to try title to certain land, it appears that plaintiff claims title through the Central Pacific Railroad Company, whose right matured, under an act of congress, October 20, 1868, but title did not vest where pre-emption rights had arisen. O. settled upon the land in question before October 20, 1868; but, owing to the fact that the land register did not open his office within the time prescribed for filing his claim, O. was obliged to await the time of the register's entrance upon his official duties, and, within the prescribed time after it was thus possible to comply with the law, filed his declaratory statement, as required. O. subsequently failed to comply with the requirements by which he could have obtained title. The land was afterwards entered as a homestead by defendant. *Held*, that under section 2270, Rev. St. U. S. 1878, O. was excused from complying with the pre-emption laws within the appointed time, as receiver had then been appointed, but that his claim attached when he settled upon the land, which was then excepted from the grant to the railroad company, whose grant was in *præsenti;* and such land as was excepted in the grant to the railroad, at the time the grant took effect, did not pass to it afterwards. The land when abandoned by O. became a part of the public lands of the United States, and was subject to homestead entry by defendant, and a patent of June 20, 1896, from the United States, passed title to him.

(No. 911. Decided June 1, 1898.)

Appeal from district court, Fourth district; C. H. Hart, *Judge.*

Action by D. P. Tarpey against Andrew Madsen. Judgment for defendant, and plaintiff appeals. *Affirmed.*

*Rogers & Evans,* for appellant:

Then the title passed from the United States to the railroad company, as of the date of the grant. i. e., July 1, 1862. *Tarpey v. Salt Co.,* 5 Utah 494; *Salt Co. v. Tarpey,* 142 U. S. 241; *Railroad Co.* v. *Price Co.,* 133 U. S. 509; *Railroad Co.* v. *Cunningham,* 44 Fed. 831; *U. S.* v. *Curtner,* 38 Fed. 9; *McNee* v. *Donahaue,* 76 Cal. 499, (504); *Railroad Co.* v. *Saunders,* 46 Fed. 248.

And after the railroad company paid, as it did, on November 4, 1884, the costs and fees of surveying and all the other fees and charges of the governmental officers, the lien of the United States upon the land ceased, and it had no control whatever over the property. *Salt Co.* v. *Tarpey,* Id; *Denny* v. *Dodson,* 32 Fed. 903.

Until there was a filing or entry in the United States land office, there is no "pre-emption," nor "claim," and in this case there was neither filing nor entry on October 20, 1868, when the company's road was definitely fixed; *Kan. Pac. R R. Co.* v. *Dunmeyer,* Id.; *Whitney* v. *Taylor,* 158 U. S. 85; *Northern Pacific R. R. Co.* v. *Colburn,* 164 U. S. 383; *Lansdale* v. *Daniels,* 100 U. S. 113.

In *Whitney* v. *Taylor,* Id., Mr. Justice Brewer, speaking for the court, said: "Further, it may be noticed that the granting clause of the Pacific Railroad Acts, differ from similar clauses in other railroad grants, excepts lands to which pre-emption or homestead 'claims' have attached, instead of simply cases of pre-emption or homestead 'rights.'"

Until lands are paid for, Congress has the power to grant them to another, notwithstanding they are occu-

pied, settled upon and improved, or even filed for by a pre-emptor. The land continues subject to the absolute disposing power of Congress until the settler has made the required proof of settlement and improvement, and has paid the requisite purchase money. *Frisbie* v. *Whitney*, 76 U. S. 187; *Yosemite Valley Case,* 15 Wall 77, (86–7); *Buxton* v. *Traver*, 130 U. S. 232; *Hutton* v. *Frisbie*, 37 Cal. 475, (491–2). See *Buxton* v. *Traver*, 130 U. S. 232; *Frisbie* v. *Whitney*, Id.; *Yosemite Valley Case*, Id.

Respondent's subsequent entry (June, 1896), of the land in the United States land office, created no interest in him and the patent (dated August, 1896), issued upon that entry passed none.

His entry could initiate no rights to the land, and the subsequent patent issued upon that entry conferred no valid title to him as against the railroad company or the appellant claiming and proving himself as the company's grantee. *Van Wyck* v. *Knevals,* 106 U. S. 360; *Walden* v. *Knevals,* 114 U. S. 373; *Wright* v. *Roseberry*, 121 U. S. 488; *Northern Pacific R. R. Co.* v. *Colburn,* 164 U. S. 383; *Burfenning* v. *Railway Co.*, 163 U. S. 321; *Smelting Co.* v. *Kemp,* 104 U. S. 636; *Doolan* v. *Carr,* 125 U. S. 618, (625); *Railroad Co.* v. *Herring,* 110 U. S. 27; *Steel Co.* v. *Smelting Co.,* 106 U. S. 447, (453); *Railroad Co.* v. *Dull*, 22 Fed. 489.

The decision of the register and receiver of the land office, made in 1896, as follows: "We find that the tract in question, * * * was settled upon and occupied and claimed by a qualified entryman, to wit: Moroni Olney, prior to October 20, 1868 (date of filing map), which therefore excepted the land from the operation of the grant of Congress to Central Pacific Railroad Company," was erroneous as a matter of law, and is not con-

clusive upon the appellant, and this court must review it, and decide the question for itself. *Northern Pacific R. R. Co.* v. *Colburn*, 164 U. S. 383; *Burfenning* v. *Railway Co.*, 163 U. S. 321; *Morton* v. *Nebraska*, 21 Wall 660; *Smelting Co.* v. *Kemp*, 104 U. S. 636, (646), *Wright* v. *Roseberry*, 121 U. S. 488, (519); *Davis* v. *Wiebold*, 139 U. S. 507, (529); *Doolan* v. *Carr*, 125 U. S. 618; *Knight* v. *Land Ass'n*, 142 U. S. 161; *Root* v. *Shields*, Woodworth, 340; *S. P. R. R. Co.* v. *Dull*, 22 Fed. 489, (498).

*B. H. Jones* and *Moyle, Zane & Costigan*, for respondent:

And the fact that Moroni Olney's claim lapsed or failed did not cause the lands to revert to the railroad company. *Barden* v. *Northern Pacific*, 145 U. S. 535; *Hastings* v. *Whitney*, 132 U. S. 357; *Kansas Pacific Co.* v. *Dunmeyer*, 113 U. S. 629.

ZANE, C. J.:

This is an action to try the title and to recover the possession of the S. W. ¼ of section 29 in township 1 N., range 2 W., of the Salt Lake Meridian. The plaintiff claims title by virtue of a deed of conveyance by the Central Pacific Railroad Company to him, and the following grant of the United States to that company: "That there be, and is hereby, granted to the said company, for the purpose of aiding in the construction of said railroad and telegraph line, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores thereon, every alternate section of public land, designated by odd numbers, to the amount of five alternate sections per mile on each side of said railroad, on the line thereof, and within the limits of ten miles on each side of said road, not sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption

or homestead claim may not have attached, at the time
the line of said road is definitely fixed." 12 Stat. U. S.
492. Afterwards congress passed another act, in force
July 2, 1864, to amend the first-mentioned act of 1862.
The third section of this latter act contains the following
provision: "Any lands granted by this act, or the act
to which this is an amendment, shall not defeat or im-
pair any pre-emption homestead, swamp land, or other
lawful claim, or include any government reservation or
mineral lands, or the improvements of any bona fide set-
tler." 13 Stat. U. S. 358. The exception from the grant
in the last law is more comprehensive than the one con-
tained in the first. It declares the grant shall not defeat or
impair any pre-emption homestead or other lawful claim,
nor include the improvements of any bona fide settler.
The first act excepted from the grant all lands to which
homestead or pre-emption claims should attach before
the line of the road was definitely fixed; while the latter
act excepted, not only pre-emption and homestead claims,
but all other lawful claims to the land, and all improve-
ments of bona fide settlers on the land as well. The line
of the road of defendant's grantor, at the point in ques-
tion, was definitely fixed, and a survey thereof was filed
in the office of the secretary of the interior on October 20,
1868. The land in dispute is part of a section located
within the 20-mile limit, and is designated by an odd num-
ber, and had not been sold, reserved, or otherwise dis-
posed of by the national government, nor had a home-
stead claim attached to it. It was within the grant un-
less a pre-emption right had lawfully attached to it at
the time the line of the road was definitely fixed, and the
survey thereof had been filed in the office of the general
land office. Section 2 of an act of congress approved
July 16, 1868, and in force on that day, made the late

territory of Utah a land district, and authorized the president to appoint a surveyor general, a register, and a receiver of public moneys for the same, with the same powers and duties, and entitled to the same compensation, prescribed by law in relation to land offices of the United States in the territories.  15 Stat. U. S. 91.  Section 3 of the same act provides:  "That the secretary of the interior is hereby authorized to locate said offices of surveyor general, register and receiver of public moneys at some suitable place in the territory."  And section 4 extended the pre-emption, homestead, and other laws of the United States applicable to the disposal of the public lands over the Utah district.  It appears from the record that one Moroni Olney, a citizen of the United States, and the head of a family, settled upon the land in dispute after July 16, and before October 20, 1868, intending to claim a pre-emption right to it, and that he was in the actual possession thereof upon the last-named day, but that he did not make known his claim in writing to the register of the land office until May 29, 1869, because the register did not open his office until that time; that he did make known his claim in writing to the register on that day, in which he described the land in dispute.

Section 2265, Rev. St. U. S. 1878 (2d Ed.), provides that "every claimant under the pre-emption law for land not yet proclaimed for sale is required to make known his claim in writing to the register of the proper land office within three months from the time of the settlement, giving the designation of the tract, and the time of settlement; otherwise, his claim shall be forfeited, and the tract awarded to the next settler in the order of time on the same tract of land who has given such notice, and otherwise complied with the conditions of the land."  Section 2267, Id., requires the proof and payment for the

lands claimed within 30 months after the date prescribed therein for filing the declaratory notice. Section 2270, Id., declares that "whenever the vacancy of the office either of register or receiver, or both, renders it impossible for the claimant to comply with every requisite of the pre-emption laws within the appointed time, such vacancy shall not operate to the detriment of the party claiming in respect to any matter essential to the establishment of his claim; but such requisition must be complied with within the same period after the disability is removed, as would have been allowed had such disability not existed." After July 16, 1868, Utah territory constituted a land district, and the offices of surveyor general, register, and receiver were created, but the appointments were not made and the offices opened until May of the following year; but the pre-emption, homestead, and the other laws of the United States applicable to the disposal of public lands were extended over the district when the law took effect, on the 16th day of July, mentioned above; and we must regard a vacancy as existing in those offices until the officers entered upon the discharge of their duties in the following May. The land in the district was not proclaimed for sale until after the last-named date, and the pre-emption claimant could not make known his claim in writing to the register until he entered upon his duties; and the pre-emptor had three months after he did within which to do so. It appears from the record that Olney filed his declaratory statement with the register in less than a month after the office of register was filled. Having settled upon the land in question before the railroad company established its line of definite location, and filed its survey or map thereof in the general land office, and having filed his declaratory statement with the register of the land office of the district within the time

allowed by law, we must hold that Olney's pre-emption claim had attached to the land in question, and existed thereon, before the right of the Central Pacific Railroad became fixed, and that the land in dispute did not pass by the grant relied upon.

As we have seen, the act of congress in force on July 16, 1868, created a land district consisting of the late territory of Utah, and authorized the appointment of a surveyor general, register, and receiver of public moneys, with the same powers and subject to like duties given to and imposed upon like officers in the other territories; and the same law extended the pre-emption, homestead, and other laws of the United States applicable to the disposal of its public lands over it. After the creation of the land district and the extension of such laws over it, persons having the qualifications and mentioned in the law were authorized and had the lawful right to settle upon the public lands therein subject to pre-emption, and the right to improve the same; and, by so doing, they acquired lawful rights thereto. This, it appears from the record, Moroni Olney had done; and it appears he complied with the requirements of the law as far as possible before the register of the land office was appointed, and that, within a month thereafter, he filed the declaratory statement the law required. When the acquisition of a right by an individual depends upon an act required of him within a specified time, and he is deprived by the government or person exacting it of the opportunity to do it then, but does it as soon as an opportunity is afforded later, the law will accept such performance, and secure him the right. Likewise, when an individual, in the prosecution of a lawful right, does everything required of him as far as he is able, and fails in some particular because a public officer fails to discharge a duty towards

him, the law will protect him. And the law having provided, as we have seen, that Mr. Olney might settle on the land in dispute, and acquire a pre-emption right to it, upon filing with the register of the land office of the district, within three months after such settlement, his declaratory statement, and there being no register until the expiration of six months thereafter to whom he could deliver it, and he having delivered his statement about the expiration of that time, the law protected his pre-emption right. *Baty* v. *Sale,* 43 Ill. 351; *Kile* v. *Tubbs,* 23 Cal. 432; *Lytle v. State,* 50 U. S. 314; Yosemite Valley Case, 15 Wall. 77. In the case of *Kile v. Tubbs,* supra, the court. said: "In this case it appears the plats of the United States surveys of this land have not been sent to the proper land office; so that it is out of the power of the defendant to file his notice of claim to pre-emption, or to enter and purchase the land under the United States laws. So he has done all in his power, and has lost no rights acquired under those laws." In the case of *Baty* v. *Sale,* supra, it was held where land was temporarily withdrawn from the market, and a party had filed his declaration of an intention to pre-empt it, the officers of the land office did right in excluding the time the land was not subject to entry in computing the year within which he had the right to make his proof and enter the land.

When Olney, the pre-emptioner in this case, filed his declaratory statement, his right must be deemed in law to relate to the date of his settlement on the land in dispute. Therefore he had a lawful claim upon it when the grant to the railroad took effect, and the land in dispute was not included in it. The grant of land to the Central Pacific Railroad Company took effect when the line of definite location of its road was made; and the survey filed in the general land office; but it did not include the

land in dispute, because it was at that time subject to the lawful right of Olney, a pre-emptor. But, when he afterwards failed to comply with the requisites imposed in order to obtain a title, the land became a part of the public lands of the United States, and was thereafter subject to the homestead entry of the defendant, Andrew Madsen, or to other entry or pre-emption. It did not vest in the ralroad company. Its grant was in præsenti, and such lands as were excepted at the time it took effect and not pass to it afterwards. When Olney afterwards abandoned or lost his right, the land did not become subject to the operation of the grant. *Railroad Co.* v. *Whitney*, 132 U. S. 357; *Railway Co.* v. *Dummeyer*, 113 U. S. 629. In view of the facts appearing from the record, we hold the lands in dispute were subject to entry by the defendant, Andrew Madsen, on June 20, 1896, and that the patent of August 21, 1896, passed the title to him. The judgment is affirmed.

BARTCH J., and HILES, District Judge, concur.