Margaret C. **MORRISON**

v.

**UNITED STATES of America.**

No. 4128.

United States District Court
E. D. Tennessee, S. D.

April 17, 1964.

William L. Taylor, Jr., Chattanooga, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

FRANK W. WILSON, District Judge.

In this lawsuit the plaintiff seeks to recover federal income tax in the sum of $2700.00 alleged to have been erroneously and illegally collected from the plaintiff for the calendar year 1960, together with interest thereon. Each party has filed a motion for summary judgment with a supporting affidavit. Under these motions and affidavits the facts are undisputed. It is undisputed that during the calendar year 1960 the plaintiff sustained a non-insured casualty loss in the sum of $5,000.00 to her residence as a result of damage caused to trees, shrubbery, and other improvements by an ice storm upon March 1 and 2, 1960. It likewise appears undisputed that a part of the plaintiff's taxable income for the year 1960 consisted of a profit of $18,913.4C

realized from the plaintiff's share on the sale of an orange grove. The sole issue presented to the Court is whether the $5,000.00 casualty loss is deductible from ordinary income, under Section 165(c) of the 1954 Internal Revenue Code (26 U.S.C. § 165), as claimed by the taxpayer, or whether the $5,000.00 loss was a loss sustained from an "involuntary conversion" of a capital asset under Section 1231 of the 1954 Internal Revenue Code (26 U.S.C. § 1231), which must be netted with the Section 1231 capital gain of $18,913.40 realized on the sale of the orange grove, as claimed by the government.

The legal issue here presented was decided in favor of the taxpayer in the case of Maurer v. United States, (C.C.A. 10, 1960) 284 F.2d 122. There, Judge Murrah, speaking for the Court, stated in part:

"If a taxpayer has seen fit to insure his property, he is, in due course, compensated by his insuror and the loss reduced proportionately. If, however, the casualty is uncompensated, it seems to follow that he should be allowed an ordinary deduction. This is made clear when it is seen that Section 1231 is contextually similar to the sections dealing with capital gains and losses. Thus, a compensated loss is a taxable event closely akin to a 'sale or exchange' albeit an involuntary one. Where, however, the taxpayer receives nothing in return, the factual situation is entirely different and there is no rational basis for capital loss treatment. If he can prove that the loss qualifies as a 'casualty,' it is only logical to conclude that Congress intended that there be an ordinary deduction under Section 165."

The government seeks to have the Court reject the Maurer decision as incorrect on the basis of the legislative history and statutory construction of Section 1231. It is the contention of the government that an uninsured casualty loss to residential property is a "compulsory or involuntary conversion" of a capital asset and that any such loss, where the asset was held more than six months, must therefore be offset against Section 1231 capital gains. In support of this interpretation, the government cites the amendment to Section 1231(a) made by Section 49(a) of the Technical Amendments Act of 1958, wherein uninsured casualty losses from property held for trade or business or capital assets held for more than six months and held for the production of income are excepted from Section 1231 treatment, it being contended that this by implication left uninsured casualty losses to other capital assets held for more than six months (i. e., residential property) subject to Section 1231 treatment. The legislative history of Section 49(a) of the Technical Amendments Act of 1958 is cited as supporting this interpretation of Section 1231(a). Finally, the treasury regulations relating to Section 1231, and dating back to the predecessor of Section 1231, Section 117(j) of the 1939 Internal Revenue Code, are cited as supporting this interpretation of Section 1231(a).

It appears to the Court that the fallacy in the position of the government is that it seeks to deal with and interpret Section 1231 in isolation from all other sections of the Internal Revenue Code. The government in its brief totally disregards Section 165 and treats Section 1231 as if it were the only pertinent section to the issue in this lawsuit. As stated in the Maurer case:

"Section 165, and its predecessor 23 (e), have traditionally been the means for deducting uncompensated casualty losses from income where, as here, the property is non-income producing. The casualty loss having been established by the special verdict of the jury in our case, it is deductible under Section 165 unless preempted by Section 1231. In other words, the two statutes are mutually exclusive and our problem is to put each into its proper frame of reference."

Even when dealt with in isolation from any other section, a rather involved proc-

ess of rationalization and a series of inferences must be drawn to conclude that Section 1231 treats an uninsured casualty loss to residential property as a "compulsory and involuntary conversion" of a capital asset. When viewed in context with Section 165, this Court is of the opinion that the latter section would control the deductibility of an uninsured casualty loss to residential property. The reasoning of the Appellate Court in the Maurer v. United States case, supra, appears the more compelling and cogent to this Court.

The motion for summary judgment on behalf of the taxpayer will be sustained and the countermotion for summary judgment on behalf of the government will be overruled.

An order will enter accordingly.