E. TAYLOR CHEWNING AND CAROLINE M. CHEWNING, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3991–63.   Filed July 30, 1965.

*Wayne Kendrick,* for the petitioners.
*Stuart E. Seigel,* for the respondent.

### OPINION

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the taxable year 1960 in the amount of $3,703. The petitioners having conceded one issue, the only remaining issue is whether a loss sustained as a result of the destruction, by a severe snowstorm, of boxwood bushes located on petitioners' residential property, is deductible under section 165(c)(3) of the Internal Revenue Code of 1954 as an ordinary loss, as claimed by the petitioners, or must be applied, pursuant to section 1231(a) of the Code, in reduction of the gains from sales of property used in the petitioners' trade or business, as determined by the respondent.

The facts are stipulated and the stipulations are incorporated herein by this reference.

The petitioners are husband and wife residing at Tacara Farm, Tracy's Landing, Md. They filed a joint Federal income tax return for the taxable year 1960 with the district director of internal revenue at Baltimore, Md.

During the month of December 1960, approximately 172 English boxwood bushes located on the petitioners' residential property at Tacara Farm were destroyed by a severe snowstorm. The petitioners suffered a loss in the amount of $8,500 as a result thereof, which loss was not compensated for by insurance or otherwise. The petitioners'

residence and the English boxwood bushes had been held by them for more than 6 months prior to December 1960.

In their joint income tax return for the taxable year 1960 the petitioners reported, as long-term capital gain, the amount of $13,710 received from the sale of breeding cattle. In such return the petitioners deducted the amount of $9,100 as a casualty loss resulting from the destruction of the boxwood bushes. In the notice of deficiency the respondent determined that the loss sustained with respect to the boxwood bushes was $8,500. He determined that such loss was not deductible as an ordinary loss under section 165 of the Internal Revenue Code of 1954,[1] but constituted a loss subject to treatment under section 1231 of such Code,[2] and thus operated to reduce the gain reported from the sale of breeding cattle.

The parties are apparently in agreement that the capital gain of $13,710 reported from the sale of breeding cattle constituted gain from the sale of property used in the petitioners' trade or business, within the meaning of section 1231, and that the boxwood bushes were capital assets held for more than 6 months. In any event, neither party raises any question in these respects.

The petitioners do not contend that casualty losses with respect to capital assets not used in a trade or business and not held for the production of income are excluded from losses from involuntary con-

---

[1] Section 165 of the Code provides in part as follows:

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \* \*

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a), shall be limited to—

\* \* \* \* \* \* \*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. \* \* \*

[2] Section 1231 of the Code, as it existed during the year in question, provided in part as follows:

(a) GENERAL RULE.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For purposes of this subsection—

\* \* \* \* \* \* \*

(2) losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion. In the case of any property used in the trade or business and of any capital asset held for more than 6 months and held for the production of income, this subsection shall not apply to any loss, in respect of which the taxpayer is not compensated for by insurance in any amount, arising from fire, storm, shipwreck, or other casualty, or from theft.

versions referred to in section 1231.[3]  They do contend, however, that since the loss on the boxwood bushes was not compensated for by insurance in any amount, there was no conversion thereof into money or other property, that therefore the loss sustained is not required by section 1231 to be applied against the gains referred to therein, and that hence such loss is deductible in full as an ordinary loss under section 165(c)(3) of the Code.

Section 1231 of the 1954 Code is the successor to section 117(j) of the 1939 Code, which was enacted by section 151(b) of the Revenue Act of 1942.  Sections 117(j) and 1231 in effect provide for the netting of gains and losses, recognized by other sections of the statute, from the sale or exchange of property used in the trade or business and from the compulsory or involuntary conversion of property used in the trade or business and capital assets held for more than 6 months, and provide that if the gains exceed the losses, the gains and losses shall be considered as being from sales or exchanges of capital assets held for more than 6 months, but that if the gains do not exceed the losses, the gains and losses shall not be considered as being from sales or exchanges of capital assets.  And it is to be noted that, but for these provisions, gain on involuntary conversions of property as a result of casualty would be taxable as ordinary income, there being no sale or exchange.  *Helvering* v. *Flaccus Oak Leather Co.*, 313 U.S. 247.

The provision in section 1231 of the 1954 Code that "losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion" is a reenactment of the identical provision which appeared in section 117(j) of the 1939 Code.

Following the enactment of section 117(j) by the Revenue Act of 1942 the respondent, by T.D. 5217, 1943 C.B. 314, promulgated section 19.117-7 of Regulations 103, construing the above statutory provisions as follows:

In determining whether such gains exceed such losses for the purposes of section 117(j), losses upon the destruction in whole or in part, theft or seizure,

---

[3] In this connection it is to be noted that both sec. 1231 and its predecessor, sec. 117(j) of the Internal Revenue Code of 1939, refer to losses from the involuntary conversion of "capital assets held for more than 6 months," without reference to the purpose for which such assets are held.  All regulations promulgated by the respondent since the enactment, by the Revenue Act of 1942, of sec. 117(j) of the 1939 Code, have treated casualty losses with respect to capital assets not held for the production of income as losses from compulsory or involuntary conversion within the meaning of sec. 117(j) and sec. 1231.  The regulations have continuously set forth as one type of loss which must be included in the computation under sec. 117(j) and sec. 1231 the uncompensated loss sustained upon a pleasure yacht destroyed in a storm.  Sec. 19.117-7, Regs. 103, as amended by T.D. 5217, 1943 C.B. 314; sec. 29.117-7, Regs. 111; sec. 39.117(j)-1(e), Regs. 118; and sec. 1.1231-1(g), Income Tax Regs.  See also *J. H. Anderson*, 7 TCM 811, in which we stated that under sec. 117(j)(2)(B) of the 1939 Code a loss upon the destruction of a capital asset, such as a residence, held for more than 6 months is considered a loss from an involuntary conversion.

requisition or condemnation of the property described in section 117(j) are included whether or not there was a conversion of such property into money or other property. * * *

Substantially the same provision is contained in all subsequent regulations. Sec. 29.117–7, Regs. 111; sec. 39.117(j)–1(a)(2), Regs. 118; and sec. 1.1231–1(e), Income Tax Regs.

The last sentence of section 1231(a) quoted in footnote 2 above, reading—

In the case of any property used in the trade or business and of *any capital asset* held for more than 6 months and *held for the production of income*, this subsection shall not apply to any loss, in respect of which the taxpayer is not compensated for by insurance in any amount, arising from fire, storm, shipwreck, or other casualty, or from theft. [Emphasis supplied.]

was enacted by section 49 of the Technical Amendments Act of 1958, and was made applicable to taxable years beginning after December 31, 1957.

We think that the fact that Congress excluded from the operation of section 1231 uncompensated casualty and theft losses sustained with respect to only property used in the trade or business or capital assets held for the production of income indicates the intent of Congress to include within the operation of that section casualty and theft losses with respect to capital assets *not* held for the production of income, irrespective of whether they are compensated for. That such was the intention of congress is clearly shown, we think, by the Finance Committee report with respect to the Technical Amendments Act of 1958 (S. Rept. No. 1983, 85th Cong., 2d Sess).[4] In such report it is stated

---

[4] Such committee report states at page 74:

"*Under present law where there are uninsured losses on property as a result of its destruction,* theft, seizure, requisition, or condemnation, *such losses, in the case of* property used in the trade or business or *capital assets held for more than 6 months, are treated as section 1231 losses. These casualty losses* coming under section 1231 of the code *must be added together with* other gains and losses from sales or exchanges of property used in a trade or business and with *other gains or losses from involuntary conversions.* If the resulting net amount is a gain, under section 1231 it is treated as a long-term capital gain and in effect taxed at a rate no higher than 25 percent. If, on the other hand the net amount is a loss, under section 1231 it is treated as an ordinary loss which can be offset against income taxed at the regular tax rates.

"Where a taxpayer elects to be a self-insurer against casualty losses, there seldom is a conversion into money or other property, as there would be if the destroyed property were insured. If this casualty loss were the only loss incurred during the taxable year by the self-insured person, he would be entitled to the full benefit of an ordinary loss deduction under section 1231, but where there are also 1231 gains, the casualty loss is partially or wholly offset against these gains which would otherwise be taxed as capital gains. As a result, the benefit of having casualty losses treated as ordinary, rather than capital, losses may be reduced or eliminated in the case of self-insurers, depending on the fortuitous circumstance as to what gains the taxpayer may have from trade or business assets or involuntary conversions. This is not a problem for those who are fully insured by others because they receive insurance payments in the case of destroyed property which offset the casualty losses which would otherwise be realized. Moreover, such persons may deduct currently the cost of their insurance for property used in a trade or business. Thus, in their case they obtain a deduction against ordinary income for any premiums paid and any gains from trade or business assets (or involuntary conversions) are taxed

that the general rule is that uninsured casualty losses with respect to capital assets held for more than 6 months are treated as section 1231 losses; that the amendment was intended to benefit business taxpayers who carry their own insurance; that the treatment provided therein (that is, the exclusion from the operation of section 1231 of casualty or theft losses not compensated for by insurance in any amount) applies *only* in the case of property used in the trade or business and in the case of capital assets *held for the production of income;* and that the new provision does not apply to loss arising from the destruction or theft of the taxpayer's uninsured personal automobile.

as capital gains and are not offset against losses (since these are covered by insurance) which would otherwise be treated as ordinary losses.

"Your committee believes that this constitutes an unintended hardship and for that reason it has added a provision to the House bill amending section 1231(a) of the code. The provision added makes section 1231 inapplicable in the case of losses where the taxpayer is not compensated for the loss by insurance, if the loss arises from fire, storm, shipwreck, or other casualty or from theft. *This treatment is to apply, however, only in the case of property used in the trade or business and in the case of capital assets held for more than 6 months and held for the production of income.* The effect of this provision will be to treat such losses always as ordinary losses and never to offset them against gains which might otherwise be treated as capital gains."

(Emphasis supplied.)

Such committee report also states as follows at page 203 :

"This is a new section for which there was no corresponding section in the House bill.

"This section amends section 1231(a) of the 1954 Code by making it inapplicable to any loss in respect of which the taxpayer is not compensated by insurance in any amount if the loss arose from fire, storm, shipwreck, or other casualty, or from theft, and the loss occurred with respect to property used in the trade or business or a capital asset held for more than 6 months *and held for the production of income.*

"Under section 1231, *uninsured casualty losses* on depreciable property or real estate used in the trade or business or *on capital assets must be aggregated with various other types of section 1231 gains and losses.* If, in a particular taxable year, the recognized gains on sales or exchanges of section 1231 property plus the recognized gains from involuntary conversions of such property and capital assets held for more than 6 months exceed the recognized losses from such sales, exchanges, and conversions, the net gain is in effect treated as longterm capital gain subject to reduced rates of taxation. If the losses exceed the gains, the net loss is in effect treated as an ordinary loss deductible from income from other sources. Consequently, whether an uninsured casualty loss will be deducted in whole or *in part against ordinary income or against gains subject to capital gain rates will depend on the overall gain or loss position of the taxpayer under section 1231 for the taxable year.*

"*Your committee has provided this section to separate certain uninsured casualty losses from the computation of section 1231 gain or loss, but only with respect to* property used in the trade or business and *capital assets held for the production of income* which have been held more than 6 months. The amendment applies with respect to, for example, loss incurred as the result of the destruction of a taxpayer's oil tanks which he used for oil storage in his trade or business, but on which he was unable to obtain insurance. *On the other hand, the amendment does not apply to loss arising from the destruction or theft of the taxpayer's uninsured personal automobile. The amendment is intended to benefit business taxpayers who,* because of the special hazards of their business or for other reasons, *carry their own insurance.* As compared with business taxpayers who carry insurance with outside insurance companies and can deduct the net premium costs of such insurance as ordinary business expense, the self-insured taxpayer cannot deduct amounts set aside in reserve to cover the contingency of a casualty loss. In the eventuality of such loss, it may be recognized as a capital rather than an ordinary loss deduction, depending on the overall gain or loss position of the taxpayer in the particular taxable year. Under this amendment, net gains with respect to section 1231 property continue to be treated as capital gains, but the casualty losses to which the amendment applies are fully deductible against ordinary income under section 165 of the 1954 Code."

(Emphasis supplied.)

Following the passage of the Technical Amendments Act of 1958, section 1.1231–1(e) of the Income Tax Regulations under the 1954 Code was amended by T.D. 6394, 1959–2 C.B. 186, to read as follows:

(e) *Involuntary conversion*—(1) *General rule.* For purposes of section 1231, the terms "compulsory or involuntary conversion" and "involuntary conversion" of property mean the conversion of property into money or other property as a result of complete or partial destruction, theft or seizure, or an exercise of the power of requisition or condemnation, or threat or imminence thereof. Losses upon the complete or partial destruction, theft, seizure, requisition or condemnation of property are treated as losses upon an involuntary conversion *whether or not there is a conversion of the property into other property or money unless subparagraph (2) of this paragraph applies. For example, if a capital asset held for more than 6 months, with an adjusted basis of $400, but not held for the production of income, is stolen, and the loss is not compensated for by insurance or otherwise, section 1231 applies to the $400 loss.*

(2) *Certain uninsured losses.* Notwithstanding the provisions of subparagraph (1) of this paragraph, losses sustained during a taxable year beginning after December 31, 1957, with respect to both property used in the trade or business and any capital asset held for more than 6 months *and held for the production of income,* which losses arise from fire, storm, shipwreck, or other casualty, or from theft, and which are not compensated for by insurance in any amount, are not losses to which section 1231(a) applies. Such losses shall not be taken into account in applying the provisions of this section.

[Emphasis supplied.]

Section 1.1231–1(g) of the Income Tax Regulations set forth an example in which a loss, not compensated for in any amount, sustained upon a pleasure yacht destroyed in a storm is treated as a loss subject to section 1231.

The Supreme Court has many times held that regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes, and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496. We think, particularly in view of the expression of congressional intent contained in the committee report, that section 1.1231–1(e) of the Income Tax Regulations is a reasonable interpretation of section 1231 of the Code, as amended by the Technical Amendments Act of 1958.

It is our conclusion that, except in the case of property used in the trade or business or capital assets held for the production of income, casualty losses are subject to the provisions of section 1231, as amended, whether or not compensated for by insurance in any amount.

We hold, therefore, that the respondent properly determined that the loss sustained by the petitioners with respect to the boxwood bushes is not deductible as an ordinary loss under section 165(c)(3), but must be applied against the petitioners' gain from sale of breeding cattle, pursuant to the provisions of section 1231.

The petitioners rely principally upon *Maurer* v. *United States*, (C.A. 10) 284 F. 2d 122, which they state decided the exact question here presented in favor of the taxpayer. In that case the court held that losses suffered in the taxable year 1954 as a result of the destruction, by severe drought and abnormal weather conditions, of trees and valuable plantings on residential property, which were not compensated for to any extent by insurance or otherwise, were deductible as ordinary losses under section 165 of the Internal Revenue Code of 1954, and that section 1231 of the Code had no application. It took the view that section 1231 was applicable only to losses where there was a conversion into "other property or money," leaving section 165 applicable to uncompensated losses. The court stated in part:

Section 165, and its predecessor 23(e), have traditionally been the means for deducting uncompensated casualty losses from income where, as here, the property is non-income producing.[5] The casualty loss having been established by the special verdict of the jury in our case, it is deductible under Section 165 unless preempted by Section 1231. In other words, the two statutes are mutually exclusive and our problem is to put each into its proper frame of reference.

* * * The avowed purpose [of sec. 117(j) of the 1939 Code, predecessor of sec. 1231 of the 1954 Code] was to allow taxpayers, whose property had been seized in furtherance of the war effort a capital gain rather than an increase in ordinary income. This is so because not infrequently the taxpayer received much more for his seized property than his depreciated cost, and it seemed unjust to tax him at wartime's exceptionally high income tax rates. Conversely, the legislation provided in the event a net loss was sustained, the taxpayer should be entitled to an ordinary deduction.[6] * * * Viewed in this light, it seems clear that Section 1231 is aimed at involuntary conversions where "other property or money" is received in return, i.e., compensated losses, leaving Section 165 applicable to uncompensated losses.

If a taxpayer has seen fit to insure his property, he is, in due course, compensated by his insurer and the loss reduced proportionately. If, however, the casualty is uncompensated, it seems to follow that he should be allowed an ordinary deduction. This is made clear when it is seen that Section 1231 is contextually similar to the sections dealing with capital gains and losses.[7] Thus, a compensated loss is a taxable event closely akin to a "sale or exchange" albeit an involuntary one. Where, however, the taxpayer receives nothing in return, the factual situation is entirely different and there is no rational basis for capital loss treatment. If he can prove that the loss qualifies as a "casualty," it is only logical to conclude that Congress intended that there be an ordinary deduction under Section 165.

[Footnotes omitted.]

The respondent contends that the *Maurer* case [5] reaches an erroneous conclusion and urges that it not be followed. He points out that his regulations since the enactment of the Revenue Act of 1942 have con-

---

[5] In Rev. Rul. 61–54, 1961–1 C.B. 398, the Internal Revenue Service announced that it would not follow as a precedent the decision in the *Maurer* case and that it would continue to adhere to the position that uncompensated casualty losses with respect to property not held for the production of income are within the purview of section 1231 of the Code.

tinuously provided that losses from the destruction of property are to be considered as losses from involuntary conversions whether or not converted into other property or money; that Congress, in the face thereof, reenacted in section 1231 of the 1954 Code the same language as had been contained in section 117(j) of the 1939 Code; and that such reenactment evidences congressional approval of his regulations. However, we express no opinion as to the correctness of the *Maurer* case, since, unlike the instant case, it involved a casualty loss suffered in a year prior to the effective date of the amendment of section 1231 by the Technical Amendments Act of 1958. Even if section 1231 prior to its amendment covered only losses from the destruction of capital assets where there was an actual conversion into other property or money,[6] we think there can be no question, for the reasons stated above, that after its amendment it encompasses losses from the destruction of capital assets *not held for the production of income*, whether or not there was an actual conversion into other property or money. And it may be added that since the amendment specifically refers to casualty losses, and employs the terminology used in section 165(c)(3), there can be no question that Congress intended casualties to be included within the scope of compulsory or involuntary conversions referred to in section 1231.

The petitioners also cite *Oppenheimer* v. *United States* (W.D. Mo.) 222 F. Supp. 194, in support of their contention. We consider such case inapposite since it also involved a casualty loss suffered in a year prior to the effective date of the amendment made to section 1231 by the Technical Amendments Act of 1958.

In addition, petitioners cite *Morrison* v. *United States* (E.D. Tenn.) 230 F. Supp. 989, on appeal (C.A. 6). Such case involved a loss, not compensated for to any extent, resulting from the destruction by storm in 1960 of trees and shrubbery connected with a residence. The court, relying on *Maurer* v. *United States, supra*, held that section 1231 had no application and that the loss was allowable as an ordinary deduction under section 165 of the Code. The same court reached the same conclusions with respect to 1960 storm losses in *Killebrew* v. *United States*, 234 F. Supp. 481, and *Hall* v. *United States*, — F. Supp. —, on appeal (C.A. 6). For the reasons set forth hereinabove, we are unable to agree with the conclusions reached in the last three cited cases dealing with uncompensated casualty losses to residential property sustained in years governed by section 1231 as amended by the Technical Amendments Act of 1958.

---

[6] But see *Fred Draper*, 32 T.C. 545, in which we held that a loss sustained in 1949 from the destruction, by a windstorm, of a building used in the taxpayer's business, and not compensated for to any extent, was subject to the provisions of section 117(j) of the 1939 Code.

In view of the foregoing, we approve the respondent's determination. Reviewed by the Court.

SCOTT, J., concurs in the result.

*Decision will be entered for the respondent.*