Margaret C. **MORRISON**, Plaintiff-Appellee,

v.

**UNITED STATES** of America, Defendant-Appellant.

No. 16162.

United States Court of Appeals Sixth Circuit.

Jan. 25, 1966.

William A. Friedlander, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept.

of Justice, Washington, D. C., on the brief; John H. Reddy, U. S. Atty., Ottis B. Meredith, Asst. U. S. Atty., Chattanooga, Tenn., of counsel), for appellant.

William L. Taylor, Jr., Chattanooga, Tenn. (Carl A. Swafford, Richard P. Jahn, Chattanooga, Tenn., on the brief), for appellee.

Before WEICK, Chief Judge, CELEBREZZE, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal by the government as defendant-appellant from an order of the United States District Court for the Eastern District of Tennessee granting judgment to Margaret C. Morrison, plaintiff-appellee. The plaintiff-appellee brought the action in the District Court to recover upon a claim for income taxes alleged to have been erroneously and illegally collected by the government. Both parties filed a motion for summary judgment. The court sustained the motion of plaintiff-appellee and denied the government's motion. The government appealed. The parties will be referred to as the taxpayer and the government.

In 1960, the taxpayer sustained a loss to her personal residence, resulting from damage caused by an ice storm to trees, shrubbery and other improvements upon the premises. The amount of the loss was fixed at $5000, none of which was compensated for by insurance or otherwise in any amount. In the same year, the taxpayer realized a gain in the amount of $18,913.40 upon the sale of an orange grove which had been held by her for income producing purposes. Upon her tax return for the year 1960, the taxpayer treated the gain from the sale of the orange grove as a gain from the sale of a capital asset under the provisions of Section 1231(a) of the Internal Revenue Code of 1954.[1] She treated the loss from the storm damage as a casualty loss and deducted it as an ordinary loss under the provisions of Section 165(c) (3) of the Code.

The District Director took the position that the loss was an involuntary conversion of a capital asset held for more than six months and, as such, it had to be netted against the gain from the orange grove, in accordance with Section 1231 (a). A question of law is presented involving the construction of Sections 165 (c) (3) [2] and 1231(a) [3] of the Code.

It is conceded by the government that the loss in question here qualifies as

---

1. Sectional references are to the Internal Revenue Code of 1954. (Title 26, U.S.C.)

2. (a) General rule.—

   There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

   (b) Amount of deduction.

   For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

   (c) Limitation on losses of individuals.—

   In the case of an individual, the deduction under subsection (a) shall be limited to—

   (1) losses incurred in a trade or business;

   (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business, and

   (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *

3. If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For purposes of this subsection—

   (1) in determining under this subsection whether gains exceed losses,

a casualty loss within the terms of Section 165(c) (3) and that if it is not also covered by Section 1231(a), it is deductible in full as an ordinary loss. It is likewise agreed that the gain from the sale of the orange grove was properly reported under Section 1231(a). This section does not define either income or losses. It only provides for the treatment of certain gains as gross income and certain losses which have the status of income and losses by virtue of other sections of the Revenue Code. (Section 1231(a) (1).) Historically, Section 1231(a) is the successor to Section 117(j) of the 1939 Revenue Code and was enacted by Section 151(b) of the Revenue Act of 1942. It was enacted to give special additional benefits to taxpayers in the form of reduced tax rates (Capital gain rates) for certain items of income. The apparent purpose was to allow taxpayers, whose property had been seized in furtherance of the war effort, a capital gain rather than an increase in ordinary income. Had it not been for the provisions of Section 1231(a), the gain from the sale of the orange grove would have been taxed as ordinary income. Helvering v. Flaccus Oak Leather Co., 313 U.S. 247, 61 S.Ct. 878, 85 L.Ed. 1310.

■ It is undisputed that Section 1231 (a) in effect provides for the netting of gains and losses, recognized by other sections of the Revenue Code, arising out of certain types of transactions. These transactions are sales or exchanges of property used in trade or business, the compulsory or involuntary conversion, *into other property or money*, of property used in the trade or business and capital assets held for more than six months. If

the recognized gains from such transactions exceed the losses from such transactions, the gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than six months. In other words, the taxpayer is allowed capital gains treatment which he would not be entitled to if it were not for Section 1231(a).

It is claimed on behalf of the taxpayer that because there was no conversion into *other property or money* the loss in question here is not included in the type of losses intended to be covered by Section 1231(a). We do not agree.

The last paragraph of Section 1231(a) as it now appears in the Code was added by Section 49 of the Technical Amendments Act of 1958. (72 Stat. 1642.) By this amendment, Congress excluded from the application of this section, property used in the trade or business and any capital asset held for more than six months *and held for the production of income,* where the taxpayer was not compensated by insurance in any amount. It is significant that Congress did not exclude the classification of "capital assets held for more than six months."

■ Prior to the amendment, the applicable Treasury Regulations on Income Tax 1954 Code, provided

"Losses upon the complete or partial destruction, theft, seizure, requisition or condemnation of property are treated as losses upon an involuntary conversion whether or not there is a conversion of the property into other property or money." T.D. 6253, 1957–2 Cum.Bull. 547, 551.

This same interpretation of the law has been in the Treasury Regulations since

the gains described therein shall be included only if and to the extent taken into account in computing gross income and the losses described therein shall be included only if and to the extent taken into account in computing taxable income, except that section 1211 shall not apply; and

(2) losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or

capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion. In the case of any property used in the trade or business and of any capital asset held for more than 6 months and held for the production of income, this subsection shall not apply to any loss, in respect of which the taxpayer is not compensated for by insurance in any amount, arising from fire, storm, shipwreck, or other casualty, or from theft.

1943,[4] the year following the initial passage of the Act. We recognize that no validity can attach to a Treasury Regulation if it is inconsistent with the statute. It should be noted, however, that in the face of the long existence of this Regulation at the time of the 1958 amendment, Congress did not add "capital assets held for more than six months" to the two enumerated exclusions in the amendment. Nor had Congress taken cognizance of it in previous legislation.

■ Treasury regulations may acquire the force of law and we think the regulation with reference to Section 1231 (a) is in that category. In Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52, the Court said:

"Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law."

See also Cammarano v. United States, 358 U.S. 498, 510, 79 S.Ct. 524, 3 L.Ed.2d 462; Boehm v. Commissioner, 326 U.S. 287, 291, 66 S.Ct. 120, 90 L.Ed. 78, reh. den. 326 U.S. 811, 66 S.Ct. 468, 90 L.Ed. 495; Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 469, 66 S.Ct. 250, 90 L.Ed. 203, reh. den. 326 U.S. 812, 66 S.Ct. 482, 90 L.Ed. 496; Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831, reh. den. 334 U.S. 813, 68 S.Ct. 1014, 92 L.Ed. 1744; Lykes v. United States, 343 U.S. 118, 126, 72 S.Ct. 585, 96 L.Ed. 791, reh. den. 343 U.S. 937, 72 S.Ct. 768, 96 L.Ed. 1344; Massachusetts Mutual Life Ins. Co. v. United States, 288 U.S. 269, 273, 53 S.Ct. 337, 77 L.Ed. 739; United States v. Moore, 95 U.S. 760, 763, 24 L.Ed. 588; Hastings and Dakota Railroad Co. v. Whitney, 132 U.S. 357, 366, 10 S.Ct. 112, 33 L.Ed. 363; Logan v. Davis, 233 U.S. 613, 627, 34 S.Ct. 685, 58 L.Ed. 1121; Swendig v. Washington Water Power Co., 265 U.S. 322, 331, 44 S.Ct. 496, 68 L.Ed. 1036; Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397; Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457.

It is apparent from the report of the Finance Committee of the Senate that it took the same view.

"Your committee has provided this section to separate certain uninsured casualty losses from the computation of Section 1231 gain or loss, but only with respect to property used in the trade or business and capital assets held for the production of income which have been held more than 6 months. The amendment applies with respect to, for example, loss incurred as the result of the destruction of a taxpayer's oil tanks which he used for oil storage in his trade or business, but on which he was unable to obtain insurance. On the other hand, *the amendment does not apply to loss arising from the destruction or theft of the taxpayer's uninsured personal automobile.*" (Emphasis added.) (S.Rept. No. 1983, 85th Cong., at p. 203.)

This illustration is identical to the taxpayer's loss in the case at bar.

■ We conclude that the taxpayer was not entitled to deduct her loss as an ordinary loss under Section 165(c) (3) of the Code. The loss must be offset against the gain from the sale of the orange grove under Section 1231(a).

Although Section 1231(a) was enacted over twenty years ago there have been very few decisions interpreting the section and they have all been fairly recent. The leading case decided in favor of the taxpayer is Maurer v. United States, 284 F.2d 122, C.A.10 (1960). The District Court for the Western District of Missouri, Western Division, followed *Maurer* in Oppenheimer v. United States, 220 F.Supp. 194 (1963). In our own circuit, the District Court for the Eastern District of Tennessee, Southern Division,

4. T.D. 5217, 1943 Cum.Bull. 314, 317.

followed the *Maurer* case in Killebrew v. United States, 234 F.Supp. 481 (1964), Hall v. United States, 64–2 USTC Decision 9770 (1964), and in the case now before us. The *Killebrew* and *Hall* cases are now pending in our Court on Appeal. Recently, July 30, 1965, the Tax Court of the United States, in an opinion reviewed by the Court, decided a case involving the same issue in favor of the government. E. Taylor Chewning and Caroline M. Chewning, Petitioners v. Commissioner of Internal Revenue, Respondent, 44 T.C. 678; CCH 44 TC No. 63, Decision 27,507. This case is now pending on petition for review in the United States Court of Appeals for the Fourth Circuit.

We realize that the question presented on this appeal is a close one and while we have great respect for the opinion of the Tenth Circuit, we believe that the view we take is the more logical one and that it conforms to the intent of Congress in enacting the legislation.

The judgment of the District Court is reversed and the case remanded for further proceedings consistent with the views herein expressed.