Ellis **CAMPBELL, Jr.**, District Director of Internal Revenue, Appellant,

v.

E. Paul **WAGGONER** and Helen B. **Waggoner**, Appellees.

No. 23230.

United States Court of Appeals Fifth Circuit.

Dec. 19, 1966.

David O. Walter, William A. Friedlander, Attys., Dept. of Justice, Washington, D. C., Melvin M. Digges, U. S. Atty., Fort Worth, Tex., Richard M. Roberts, Act. Asst. Atty. Gen., Lee A. Jackson,

Atty., Dept. of Justice, Washington, D. C., Martha Joe Stroud, Asst. U. S. Atty., of counsel, for petitioner.

R. B. Cannon, Fort Worth, Tex., Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel, for appellees.

Before BROWN, COLEMAN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

The question for decision in this case is whether a wholly uncompensated theft loss of personal jewelry, a non-business capital asset, may be deducted from ordinary income under Section 165 of the Internal Revenue Code of 1954, or whether the loss must be offset against capital gains as provided in Section 1231 of the Code.

On June 23, 1960, taxpayers' residence at Vernon, Texas, was burglarized and personal jewelry (stipulated to be non-business capital assets) in the value of $70,379.31, was stolen. The jewelry was not insured and the taxpayers recovered no amount through insurance or otherwise as a result of the theft. In the taxable year 1960 taxpayers realized a gain on the sale of depreciable assets (quarter horses) used in their trade or business, in the sum of $167,193.94. The horses were stipulated to be Section 1231 (Internal Revenue Code of 1954) assets. In their joint return for the year 1960, taxpayers deducted the jewelry theft loss from their ordinary income, and reported their sales of quarter horses as long-term capital gains. Upon audit of the return by the Internal Revenue Service, an adjustment was made so that the jewelry theft loss would be treated as a capital loss deductible from capital gains only, in the manner provided by Section 1231 of the Code and therefore not deductible from ordinary income. Taxpayers paid the resulting deficiency and filed this suit for refund of overpayment of income tax. The district judge, without a jury, entered judgment in their favor, allowing the jewelry theft loss as a deduction

from ordinary income on the authority of Maurer v. United States, 10 Cir., 1960, 284 F.2d 122. The District Director of Internal Revenue has prosecuted this appeal from the judgment below.

Section 165 of the Code refers to "Losses," and subsection (a) provides: "General Rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." Subsection (c) refers to "Limitation on Losses of Individuals," and provides that in the case of an individual the deduction under subsection (a) shall be limited to "(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. No loss described in this paragraph shall be allowed if, at the time of the filing of the return, such loss has been claimed for estate tax purposes in the estate tax return."

Relying on the quoted provisions of Section 165, taxpayers contend that the jewelry theft loss should be deducted from ordinary income as an ordinary loss. On the other hand, the District Director contends that the jewelry theft was an involuntary conversion of a capital asset held for more than six months and as such had to be netted against the gain from the sale of the quarter horses, in accordance with Section 1231 of the Code. Section 1231(a) reads in part as follows:

"If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains

and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * * "

Thus, gains and losses resulting from the preceding described events in Section 1231 are taxable as capital gains and losses when the gains for a given year exceed such losses sustained in that year from the same types of events. Applying the Section to the facts here, the District Director contends that in the year 1960 the gains from the sale of quarter horses which exceeded the loss from the jewelry theft in said year require that both the covered gains and losses be treated as capital gain and loss, and if the theft is thus included within the coverage of this Section, the taxpayers may deduct the jewelry theft loss only as a capital loss rather that an ordinary loss.

Taxpayers argue that the provisions in Sections 165 and 1231 are unambiguous and do not require interpretation to afford taxpayers an ordinary loss for the jewelry theft. By involved process of reasoning they further argue that to implement fully the provisions of Section 1231 two separate computations must be made to ascertain whether the gains and losses described in that Section are to be treated as capital or ordinary, and once the treatment to be accorded, ordinary or capital, has been computed

the limitations of Section 1211 are brought back into the picture and uncompensated casualty losses are thus eliminated from Section 1231 and left subject to Section 165 alone.[1] We are unable to agreee with this argument. Nor is it clear on what authority, if any, the two separate computations must be made, none being cited to us. It is true that taxpayers' position is supported by the ruling in Maurer v. United States, 10 Cir., 1960, 284 F.2d 122, where the Tenth Circuit held, in a case involving the taxable year 1954, that an uncompensated casualty loss from nonbusiness capital assets of an individual was deductible from ordinary income. The Court held that Section 1231 was aimed at involuntary conversions where "other property or money" is received in return, leaving Section 165 to provide for an ordinary loss when uncompensated involuntary conversion losses were involved. This holding forms the basis for taxpayers' argument that the expression "involuntary conversion * * * into other property or money" requires that they be reimbursed for some part of the loss for there to be Section 1231 coverage.

The legislative history of the enactment of the Internal Revenue Code and subsequent amendments does not support the Maurer decision, as evidenced particularly by the amendment to Section 1231(a) which was added by Section 49 of the Technical Amendments Act of 1958 (72 Stat. 1642). By this amendment[2] Congress made it clear that prior

---

1. Taxpayers' original brief argues the proposition in the following language:
   "The first computation (which may be referred to as the economic computation) is made to ascertain whether the gains and losses described in the first unnumbered paragraphs of Section 1231 (a) are to be treated as 'capital' or 'ordinary'. In this computation the provision of Section 1211 IRC 1954 limiting the deductibility of capital losses are ignored, and the total amount of all capital losses employed, and for the purpose of this particular calculation alone, uncompensated casualty losses are taken into consideration.

"Once the treatment to be accorded (i. e., 'capital' or 'ordinary') has been fixed by the foregoing computation, for the purpose of calculating actual tax liability the limitations of Section 1211 are brought back into the picture and uncompensated casualty losses are eliminated from the Section 1231 picture and left subject to the provision of Section 165(c) (3) alone."

2. The amendment reads as follows:
   "In the case of any property used in the trade or business and of any capital asset held for more than 6 months and held for the production of income, this subsection shall not apply to any loss, in

thereto all wholly uncompensated casualty and theft losses were covered by Section 1231. The 1958 amendment had the effect of excluding from Section 1231 treatment only wholly uncompensated casualty and theft losses used in the trade or business and of any capital asset held for more than six months and held for the production of income. Congress thus unmistakably showed that it did not wish to exclude from the effect of Section 1231 wholly uncompensated casualty and theft losses on property *not* used in a business or *not* held for the production of income, and the legislative history so reflects.[3]

Treasury regulations support the District Director's view, for they remain unchanged since 1943 when first promulgated, and provide that such losses are treated as losses upon an involuntary conversion whether or not there is a conversion of the property into other property or money.[4] In Morrison v. United States, 6 Cir., 1966, 355 F.2d 218, cert. den. 384 U.S. 986, 86 S.Ct. 1887, 16 L.Ed.2d 1004 (1966), the identical question which is presented here was considered by the Sixth Circuit and decided adversely to the taxpayer. In that case taxpayer sustained a $5,000 loss to her personal residence resulting from

---

respect of which the taxpayer is not compensated for by insurance in any amount, arising from fire, storm, shipwreck, or other casualty, or from theft."

3. The District Director in his brief refers to the following portions of the Senate Finance Committee report:
   "(S.Rep. No. 1983, 85th Cong., 2d Sess., pp. 74–75, 203–204 (1958–3 Cum.Bull. 922, 995–996, 1124–1125)):
   "Under the present law *where there are uninsured losses or property* as a result of its destruction, *theft*, seizure, requisition, or condemnation, such losses, in the case of property used in the trade or business or capital assets held for more than 6 months, *are treated as section 1231 losses.* * * *
   "Where a taxpayer elects to be a self-insurer against casualty losses, *there seldom is a conversion into money or other property*, as there would be if the destroyed property were insured. If this casualty loss were the only loss incurred during the taxable year by the self-insured person, *he would be entitled* to the full benefit of an ordinary loss deduction *under section 1231*, but where there are also 1231 gains, the casualty loss is partially or wholly offset against these gains which would otherwise be taxed as capital gains. * * *
   " * * * The provision added makes section 1231 inapplicable in the case of losses *where the taxpayer is not compensated for the loss by insurance*, if the loss arises from fire, storm, shipwreck, or other casualty, or from theft. *This treatment is to apply, however, only in the case of property used in the trade or business and in the case of capital assets held for more than

*6 months and held for the production of income.* * * *
   * * * * *
   "This section amends section 1231(a) of the 1954 Code *by making it inapplicable* to any loss in respect of which the taxpayer is *not compensated by insurance in any amount* if the loss arose from fire, storm, shipwreck, or other casualty, or from theft, *and the loss occurred with respect to property used in the trade or business or a capital asset held for more than 6 months and held for the production of income.*
   "Under section 1231, *uninsured casualty losses* on depreciable property or real estate used in the trade or business or on capital assets *must be aggregated with various other types of section 1231 gains and losses.* * * *
   "Your committee has provided this section to *separate certain uninsured casualty losses* from the computation of section 1231 gain or loss, *but only with respect to property used in the trade or business and capital assets held for the production of income which have been held more than 6 months.* The amendment applies with respect to, for example, loss incurred as the result of the destruction of a taxpayer's oil tanks which he used for oil storage in his trade or business, but on which he was unable to obtain insurance. On the other hand, *the amendment does not apply to loss arising from the destruction or theft of the taxpayer's uninsured personal automobile.* (Emphasis added.)"

4. See T.D. 5217, 1943 Cum.Bull. 314, 317; T.D. 6253, 1957–2 Cum.Bull. 547, 551; T.D. 6394, 1959–2 Cum.Bull. 186.

damage caused by a storm to trees, none of which was compensated for by insurance or otherwise. In the same year taxpayer had a gain of $18,913.40 from the sale of an orange grove which had been held by her for income-producing purposes. Taxpayer treated the gain from the orange grove as a gain from the sale of a capital asset under Section 1231(a) and treated the loss for storm damage as a casualty loss and deducted it as an ordinary loss under Section 165(c) (3) of the Code. The Court concluded that the taxpayer was not entitled to deduct her loss as an ordinary loss but that it must be offset against the gain from the sale of the orange grove under Section 1231(a). The Sixth Circuit declined to follow the holding of the Tenth Circuit in *Maurer*. The Sixth Circuit quoted with approval Chewning v. Commissioner, 44 T.C. 678, in which the Tax Court of the United States decided the same issue in favor of the Government.

Since that time *Chewning* has been affirmed per curiam by the Fourth Circuit in 1966 (363 F.2d 441, cert. den. 385. U.S. 930, 87 S.Ct. 289, 17 L.Ed.2d 212, November 7, 1966), and the Court gave the following reasons for its decision:

"We are persuaded by the able opinion of Judge Atkins that the Tax Court was correct in its interpretation of the Code and that we must reject the reasoning of Maurer v. United States, 284 F.2d 122 (10 Cir. 1960) in favor of that of Morrison v. United States, 355 F.2d 218 (6 Cir. 1966). While the taxpayers' position was not without some basis in the language of section 1231 prior to the 1958 amendment (*Maurer* applied the statute as it existed before the amendment), we think that amendment [2] clearly indicated Congress' intention that the taxpayers' loss should not be excluded from treatment under section 1231."

We believe the holdings in *Morrison* and *Chewning* state the better rule. This is especially true when we consider the effect of the 1958 amendment to Section 1231 and the legislative history. Important also is the consistent mainte-

nance of the Treasury's view over a period of twenty-two years, as shown by its regulations since 1943, which Congress has not seen fit to change. We conclude that taxpayers were not entitled to deduct their personal jewelry theft loss as an ordinary loss from ordinary income under Section 165(c) (3), but the loss must be offset against the gain from the sale of the quarter horses as provided in Section 1231(a).

Accordingly, we disagree with the court below, and hold that the suit of taxpayers should have been dismissed. The judgment of the district court is, therefore,

Reversed.